IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MELISSA HICKSON, et al., § | |
| § | |
| Plaintiffs, § | |
| V. § | |
| § | A-21-CV-514-LY |
| ST. DAVID'S HEALTHCARE § | |
| PARTNERSHIP, L.P., LLP, ET AL. § | |
| Defendants. § | |
| § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Carlye Mabry Cantu's Motion to Dismiss (Dkt. #10), Defendant St. David's Healthcare, L.P., LLP's Motion to Dismiss (Dkt. #11), Defendant Viet Vo's Motion to Dismiss (Dkt. #13), Plaintiffs' Motion to Disqualify (Dkt. #31) and the parties' responsive briefs.[1] After reviewing the entire case file and relevant case law, the undersigned issues the following Report and Recommendation to the District Court.

**I.   BACKGROUND**

This is a healthcare liability case. On June 10, 2021, Melissa Hickson, individually, Melissa Hickson as the Dependent Administrator of the Estate of Michael Hickson, deceased, Melissa Hickson as next friend of minors Mackenzie, Maceo, and Madison Hickson, and Marques Hickson, individually, (collectively, "Plaintiffs") filed the instant suit against Defendants St. David's Healthcare Partnership, L.P., LLP ("SDHP"), Hospital Internists of Texas ("HIT"), Dr. Devry

---

[1] The motions have been referred to the undersigned for a Report and Recommendation by United States District Judge Lee Yeakel pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. #30.

1

Anderson, individually, ("Anderson") Dr. Carlye Mabry Cantu, individually, ("Cantu"), and Dr. Viet Vo, individually ("Vo") (collectively, "Defendants"). Dkt. #1.

Plaintiffs' claims stem from the death of Michael Hickson in June of 2020. In 2017, Mr. Hickson suffered sudden cardiac arrest which resulted in long-term disabilities including short-term memory loss, vision loss, slow speech, and quadriplegia. Dkt. #1 at ¶ 25. Due to these disabilities, Mr. Hickson required assistance in certain daily activities such as eating, dressing, grooming, bathing, bowel and bladder management, and transferring to and from his wheelchair. *Id*. In the years following his injury, Mr. Hickson was hospitalized multiple times for recurring urinary tract infections, sepsis and pneumonia. *Id*. at ¶ 27.

Due to his disabilities, Mr. Hickson's wife (Plaintiff Melissa Hickson) filed for permanent guardianship over Mr. Hickson. *Id*. at ¶ 28. Mrs. Hickson's petition was contested by one of Mr. Hickson's sisters, who is a physician. *Id*. Pending a hearing for permanent guardianship, the probate court appointed Family Eldercare, Inc. ("Family Eldercare") as Mr. Hickson's temporary guardian. *Id*. Specifically, Ashley Nicol Yates ("Yates") was assigned his temporary guardian until April 1, 2020, when her trainee-subordinate Jessica Drake ("Drake") assumed those duties. *Id*.

In March 2020, Mr. Hickson was treated at SDHP for double pneumonia and sepsis. *Id*. at ¶ 29. Upon discharge, he was released to Brush Country Nursing and Rehabilitation, where on May 8, 2020 he tested positive for Covid-19. *Id*. On May 29, 2020, Mr. Hickson was retested for Covid-19 and the results were negative. *Id*. On June 2, 2020, Mr. Hickson was taken to SDHP for acute respiratory illness due to pneumonia, urinary tract infection, sepsis, and suspected Covid-19. *Id*. at ¶ 30. Upon admission to SDHP, Mr. Hickson was assessed and given a Modified Early Warning Score ("MEWS") which predicted that he had a 70% chance of surviving his conditions. *Id*. at ¶ 31.

According to the Complaint, despite the MEWS score predicting 70% chance of survival, shortly after Mr. Hickson's arrival at SDHP, an emergency medicine physician, Dr. Steven Jennings, recommended to a hospitalist, Defendant Dr. Cantu, that Mr. Hickson be placed in hospice, or at the very least to change his code to Do Not Resuscitate ("DNR"). *Id*. at ¶ 32. Dr. Cantu indicated to palliative care that Mr. Hickson had a poor quality of life as a result of his disabilities and recorded in Mr. Hickson's medical records "… [s]hould family and, if able, patient choose, I do believe comfort measures would be a kind choice." *Id*. at ¶ 33.

Between June 3 and June 5, 2020, Plaintiffs allege Mr. Hickson's health fluctuated. *Id*. at ¶¶ 35-38. On June 5, 2020, Mrs. Hickson was permitted to visit Mr. Hickson and interact with him via FaceTime from the hallway in the ICU. *Id*. at ¶ 38. Shortly thereafter, Defendant Dr. Vo, one of Mr. Hickson's providers at SDHP, met with Mrs. Hickson and informed her that Mr. Hickson was being moved to hospice and placed on DNR. *Id*. at ¶ 39. When Mrs. Hickson challenged the decision and asked Dr. Vo for an explanation, Dr. Vo told her "'as of right now, his quality of life, he doesn't have much of one.' When pressed to clarify, Defendant Dr. Vo explained that because of Mr. Hickson's paralysis and brain injury, he has no quality of life. Defendant Dr. Vo then distinguished Mr. Hickson from other of his patients who were being treated aggressively for COVID–19, 'his quality of life is different than theirs. They were walking, talking.'" *Id*.

On June 5, 2020, Dr. Vo completed and executed a Family Eldercare Treatment Decision Form, which he sent to Mr. Hickson's temporary legal guardian at the time, Ms. Drake. *Id*. at ¶¶ 99-100. Based on this information, Ms. Drake subsequently gave consent to SDHP and the physicians to change Mr. Hickson's code to DNR, transfer him to hospice, and to withhold all-life sustaining treatment. *Id*. at ¶ 6.

Plaintiffs allege that at the time the decision was made to render Mr. Hickson DNR and transfer him to hospice, one of Mr. Hickson's physicians recorded that Mr. Hickson was in "multi-organ system failure," which Plaintiffs allege was false. *Id*. at ¶ 43. Rather, Plaintiffs allege, Mr. Hickson did not show signs of worsening respiratory status until after the decision was made and antibiotics were abruptly withdrawn. *Id*.

On June 8, 2020, Dr. Cantu noted that Mr. Hickson was "actually having somewhat better respiration," and sent messages to SDHP's ethics consultant and palliative care nurse requesting further guidance that Mr. Hickson may no longer be general hospice appropriate, however Defendants never altered Mr. Hickson's hospice or DNR status. *Id*. at ¶ 47. On June 11, 2020, Mr. Hickson died in SDHP's hospice unit. *Id*. at ¶ 52.

On June 29, 2020, Mrs. Hickson posted a video on Facebook talking about what happened to Mr. Hickson at SDHP and the failings of Family Eldercare. Id. at 54. In response, on July 2, 2020, SDHP's chief medical officer, Defendant Dr. Devry Anderson posted a statement on SDHP's website defending the Hospital's actions, and in doing so, disclosed a significant amount of Mr. Hickson's protected health information. *Id*. at ¶ 55. The Complaint alleges that Dr. Anderson's written statement spoke derogatorily about Mrs. Hickson, without mentioning her by name, stating how uncommon it is for guardianship to be taken away from a family member and that Dr. Anderson noted authority to disclose the protected health information was given by the temporary guardian, Ms. Drake. *Id*.

Based on the above allegations, Plaintiffs filed the following claims: (1) Disability Based Discrimination under Section 504, against SDHP; (2) violation of § 1557 of Patient Protection & Affordable Care Act, 42 USC § 18116, against SDHP; (3) Negligence under Texas Medical Liability Act, under TEX. CIV. PRAC. & REM. CODE §§ 74.001, against Dr. Cantu and Dr. Vo; (4)

4

Negligence *per se* in failure to follow procedures of TEX. HEALTH & SAFETY CODE § 166.044(d), against Dr. Cantu and Dr. Vo; (5) Negligence in Obtaining Informed Consent, against SDHP and HIT; (6) Negligence in Failing to Guide Ms. Drake, a Trainee with a Provisional Guardianship Certificate, in Substituted Decision-Making, against Dr. Cantu and Dr. Vo; (7) Section 1983 claims of violation of Fourteenth Amendment right to life, against SDHP, Dr. Cantu, and Dr. Vo; (8) Wrongful Death Claim under TEX. CIV. PRAC. & REM. CODE §§ 71.001, against SDHP, HIT, Dr. Cantu, and Dr. Vo; and (9) Intentional Infliction of Emotional Distress against SDHP and Dr. Anderson.

Before the court now are three motions: Dr. Cantu and HIT's Motion to Dismiss (Dkt. #10), SDHP's Motion to Dismiss (Dkt. #11), and Dr. Vo's Motion to Dismiss (Dkt. #13). The undersigned addresses the parties' respective arguments in turn.

## II.   STANDARDS OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than

"a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III.   ANALYSIS

#### A.  SDHP's Motion to Dismiss

With respect to SDHP, Plaintiffs are asserting the following causes of action: (1) violation of Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794; (2) violation of the Patient Protection and Affordable Care Act, codified at 42 U.S.C. § 18001; (3) negligence; (4) violations of 42 U.S.C. § 1983; and (5) intentional infliction of emotional distress. Dkt. #1 at ¶¶ 56-74, 121-142, & 153-177. Plaintiffs are asserting these claims in their individual capacities under the Texas Wrongful Death Act, and Mrs. Hickson is also presenting claims on behalf of Mr. Hickson's Estate under the Texas Survival Act. *Id*. at ¶¶ 143-152. SDHP's motion seeks to dismiss

Plaintiffs' claims under the Rehabilitation Act and Affordable Care Act, claim for intentional infliction of emotional distress (IIED), and claims under Section 1983. *See* Dkt. #11.

1. Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act

Section 504 "protects the disabled who seek to participate in a program or activity receiving federal funds from discrimination." *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015). "To state a §504 claim, 'the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits.'" *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 676 (5th Cir. 2020). Section 1557 of the ACA, in turn, "prohibits discrimination based on any of the grounds protected under . . . the [RA] during the provision of health care. *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 377 (5th Cir. 2021). In that manner, "for disability-discrimination claims, the ACA incorporates the substantive analytical framework of the [RA]." *Id.* at 378 (explaining "we will analyze [plaintiff's] RA and ACA claims together.")

Here, SDHP contends that Plaintiffs' claims are in essence a medical malpractice claim, to which Section 504 and the ACA do not apply. *See Kim v. HCA Healthcare, Inc.*, 2021 WL 859131, at *2 (N.D. Tex. Mar. 7, 2021) ("every circuit court that has addressed the issue has held that a medical treatment decision cannot form the basis of a Rehabilitation Act claim."). The court agrees. Here, Plaintiffs' core complaint is improper treatment for Mr. Hickson's medical condition, including the decision to withdraw further life-sustaining treatment. *See* Dkt. #1 at ¶¶ 41, 78-90. Accordingly, Plaintiffs' claims are not "classic discrimination claims," but rather medical malpractice claims which are not subject to the RA or ACA and must therefore be dismissed. *Guthrie v. Niak*, 2017 WL 770988, at *14 (S.D. Tex. Feb. 28, 2017) ("Plaintiff's efforts to recast his medical indifference claim as an ADA claim as a matter of law, because insufficient or

negligent medical care is not cognizable under the ADA or Rehabilitation Act."); *see also, G.T. by Rolla v. Epic Health Servs.*, No. 17-CV-1127-LY, 2018 WL 8619803, at *4 (W.D. Tex. Dec. 27, 2018) (Lane, M.J.), *adopted by*, 2019 WL 2565245 (W.D. Tex. Apr. 11, 2019).

    2.   <u>Intentional Infliction of Emotional Distress</u>

"Under Texas law, to recover damages for IIED, 'a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe.'" *Jonas v. Ocwen Fin. Corp.*, 2011 WL 2960108, at *5 (S.D. Tex. July 20, 2011). Whether the defendant's conduct is sufficiently "extreme and outrageous" is initially a question of law for the court. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). The conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Id*. Moreover, the plaintiff's emotional distress must be so severe that no reasonable person could be expected to endure it. *Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex. App.—Dallas 1993, writ denied).

Here, Plaintiffs based their IIED claim on the following instances of alleged conduct by SDHP, and its chief medical officer, Dr. Devry Anderson: that SDHP security guards escorted Mrs. Hickson throughout the hospital, including during "private moments" with her family (Dkt. #1 at ¶¶ 158-159); SDHP failed to communicate basic information about Mr. Hickson's status (*Id*. at ¶¶ 160-164); SDHP failed to coordinate FaceTime visits with Mr. Hickson from June 8-June 11, 2020 (*Id*. at ¶¶ 160, 173); SDHP failed to immediately communicate Mr. Hickson's death to Mrs. Hickson (*Id*. at ¶¶ 165-167); and SDHP, through Dr. Anderson, posted the written statement on its website including details of Mr. Hickson's protected health information, details of the

guardianship proceedings, and the fact that Mrs. Hickson was escorted by security (*Id*. at ¶¶ 168-170).

In its motion, SDHP challenges the characterization of several of these incidents, in particular that the decisions to have security escort Mrs. Hickson, withhold certain information about Mr. Hickson's status, and the decision to disclose details of Mr. Hickson's health information in the written statement were all authorized by Family Eldercare through Ms. Drake or Ms. Yates. Dkt. #11 at 12. Nonetheless, even accepting all of Plaintiffs' allegations as true, SDHP argues that Plaintiffs' IIED claims fail as a matter of law because they do not rise to the high standard set by Texas law for such claims. *Id*. at 13. The court agrees.

Specifically, Plaintiffs have failed to allege "circumstances bordering on serious criminal acts," and Plaintiffs have failed to demonstrate that any "conduct was 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized society.'" *Creditwatch, Inc*., 157 S.W.3d at 818; *Shah v. Univ. of Texas Sw. Med. Sch*., 54 F. Supp. 3d 681, 706 (N.D. Tex. 2014) ("Because Shah has failed to plead conduct that borders on 'serious criminal acts,' or that was 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized society,' the court grants the individual defendants' motion to dismiss Shah's IIED claim."); *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (affirming dismissal of IIED claim where the plaintiff "simply failed to allege any conduct 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'").

Here, the alleged incidents Plaintiffs base their IIED claims on may be troublesome, but they do not border on "serious criminal acts," nor can they be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized community." *Arnold*, 979 F.3d at 270. Accordingly, SDHP's motion should be granted as to the IIED claims.

3. Section 1983 Claim

Section 1983 is the statutory vehicle for plaintiffs to recover damages for violations of federal constitutional or statutory law against those acting under the color of state law. *See* 42 U.S.C. § 1983. To state a §1983 claim, a plaintiff must establish "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *White v. City of New Orleans*, 844 Fed. Appx. 719 (5th Cir. 2021). SDHP's motion challenges Plaintiffs' Section 1983 claim, arguing the claim fails as a matter of law because Plaintiffs have not alleged any action occurring under color of state law or any state actor. Dkt. #11 at 15.

Plaintiffs do not dispute that the defendants they joined in this federal lawsuit are private actors. *See* Dkt. #1 at ¶ 19 ("St. David's HealthCare is the third largest private employer in the Austin area"). Rather, Plaintiffs rely on the proposition advanced in a recent state court decision that "hospitals and medical providers step into the shoes of the state and act under the color of state law when they make the determinations to withdraw life-sustaining treatment from individuals traditionally encompassed by the *parens patriae* power of the state without strictly adhering to statutes and regulations governing the provision of care to such individuals." Dkt. #1 at ¶ 132 (citing *T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9 (Tex. App.—Fort Worth July 24, 2020, pet. denied)).

As an initial matter, the state court's holding in *T.L.* is not binding on this court. *See Sys. Contractors Corp. v. Orleans Par. Sch. Bd.*, 148 F.3d 571, n. 23 (5th Cir. 1998) (explaining that, "[a]lthough state courts have the authority to decide issues of federal constitutional law, state court

decisions are not binding upon the federal courts"). Moreover, none of the factors discussed in *T.L.* are present here. In *T.L.* the state court relied on the following factors in deciding the hospital acted under the color of state law: that the patient was a minor child, that the minor child's parents refused to consent to the recommended treatment, that the hospital performed a public function in supervening the fundamental right of the parent to make medical decisions for the treatment decisions of her child, that the state has the sovereign authority to regulate what is and is not lawful means of dying, naturally or otherwise, and that the hospital's decision to discontinue life-sustaining treatment over the wishes of the legal guardian invokes the state's delegated authority under Section 166.046 of the Texas Advanced Directives Act (TADA). *See T.L.*, 607 S.W.3d at 24-40.

Here, Mr. Hickson was not a minor child. Nor did Mr. Hickson's legal guardians—Family Eldercare, through Ms. Yates and Ms. Drake—refuse to consent to the treatment recommended by SDHP or physicians. Rather, Mr. Hickson's wife, Mrs. Hickson, who did not have any legal guardianship over Mr. Hickson at the time, brings suit against SDHP after the fact because she disagreed with the treatment that was agreed upon by SDHP and Mr. Hickson's acting legal guardians with Family Eldercare. Accordingly, this case is factually distinguishable from *T.L.* Plaintiffs have thus not properly alleged any state actors or action under color of state law. Accordingly, Plaintiffs' claims under Section 1983 fails as a matter of law and should be dismissed with prejudice.

    4. <u>Negligence Theories</u>

Lastly, SDHP challenges Plaintiffs' claims that SDHP was negligent in (1) failing to "properly train" Drs. Cantu and Vo "in the proper supervision and coaching of persons assessing provisional guardianship certification in rendering informed consent and the exercise of substituted

11

judgment;" and (2) failing to "properly train" Drs. Cantu and Vo in "identifying the level of experience or certification of a court-appointed temporary guardian for purposes of then determining the amount of supervision, guidance and coaching the temporary guardian may require in the rendering of informed consent, substituted judgment and in making other healthcare decisions." Dkt. #1 at ¶¶ 112, 126, 121. SDHP argues these claims are improper "restatements" of Plaintiffs' claims against Drs. Cantu and Vo for failure to obtain informed consent and failure to guide the guardian. Dkt. #11 at 24-26.

Turning first to Plaintiffs' claim that SDHP failed to properly train Drs. Cantu and Vo on rendering informed consent, the court finds that this claim is an improper recasting of an informed-consent claim. Importantly, "[i]n Texas, the duty to obtain informed consent is a nondelegable duty imposed solely upon the treating doctor." *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 686 (Tex. App.—Dallas 2000, no pet.). Accordingly, Texas law is clear that "[h]ospitals have no such duty of disclosure of medical or surgical risks, nor are they required to secure a patient's informed consent prior to surgery." *Id.* When a "recast" negligence claim against a hospital "is necessarily predicated on an actual failure to obtain informed consent . . . the claims can be brought only as an informed consent claim." *Sanchez v Martin*, 378 S.W. 3d 581, 591 (Tex. App. – Dallas 2012) (no pet.). In other words, artful pleading cannot convert an informed consent claim to a negligence claim against a hospital. *Id*.

Similarly, Plaintiffs' claim that SDHP had a duty to train Drs. Cantu and Vo on how to "guide" or "supervise" a legal guardian during the informed consent process fails as a matter of law because such a duty is not recognized by Texas law. Rather, Texas law prohibits such an imposition of duty as an improper "corporate practice of medicine." *See Gaalla v. Citizens Med. Ctr.*, 2010 WL 5387603, at *3 (S.D. Tex. Dec. 17, 2010) (Tex. Occ. Code §§164.052(a)(17) §

165.156, & 155.001)) ("Under the 'corporate practice of medicine' doctrine contained in the Texas Medical Practice Act and codified in the Texas Occupations Code, the practice of medicine is restricted to licensed physicians."). Accordingly, the court cannot impose a duty on SDHP to train or mandate how a physician must "supervise" or "guide" a legal guardian when the legal guardian is rendering informed consent, as such a duty would improperly invade the patient-physician relationship and constitute an illegal practice of medicine. *See Galla*, 2010 WL 5387603, at *3. Accordingly, SDHP's motion should be granted as to these claims as well.

### B. Dr. Cantu and HIT's Motion to Dismiss

Plaintiffs plead the following causes of actions against Dr. Cantu: (1) Negligence under TEX. CIV. PRAC. & REM. CODE Chapter 74 (Dkt. #1 at ¶¶ 75-86); (2) Negligence *Per Se* (Dkt. #1 at ¶¶ 87-93); (3) Negligence in obtaining informed consent (Dkt. #1 at ¶¶ 94-109); (4) Negligence in Failing to Guide Ms. Jessica Drake, a trainee, possessing a provisional guardianship certificate in substituted decision-making (Dkt. #1 at ¶¶ 110-120); (5) a Section 1983 claim for deprivation of 14th Amendment right to life (42 U.S.C.A. § 1983) (Dkt. #1 at ¶¶ 130-142)); and (6) wrongful death under TEX. CIV. PRAC. & REM. CODE Chapter 74 (Dkt. #1 at ¶¶ 143-152).

Dr. Cantu argues that Plaintiffs' informed consent, failure to guide the guardian, and Section 1983 claims against her fail as a matter of law. *See* Dkt. #10. As HIT is vicariously liable for Dr. Cantu's actions as her employer, all claims dismissed against Dr. Cantu must also be dismissed against HIT.

1. <u>Negligence in Failure to Obtain Informed Consent</u>

Dr. Cantu's motion first challenges Plaintiffs' claims alleging negligence in obtaining informed consent. Dkt. #10 at 5-8. Plaintiffs allege that Dr. Cantu failed to disclose to Mr. Hickson's legal guardian, Ms. Drake, all material risks, benefits and alternatives which would

influence Ms. Drake in deciding whether to consent to hospice transition, DNR status and the decision to withdraw life-sustaining treatment. Dkt. #1 at ¶ 105. Dr. Cantu's motion argues that Plaintiffs fail to state a claim to this effect because Plaintiffs fail to plead sufficient facts regarding what was discussed between the parties who were making medical decisions and what information was communicated in obtaining informed consent. Dkt. #10 at 6. Dr. Cantu points out that Mrs. Hickson was not present for these conversations between the physicians and Family Eldercare guardians. *Id*. Moreover, Dr. Cantu was not a party to the Family Eldercare Treatment Decision Form which served as the basis for Ms. Drake's decision to give consent. *Id*.

The court agrees, Plaintiffs have not alleged facts to support the claim that Dr. Cantu breached her duty to provide Ms. Drake with information that may or may not have influenced her to give or withhold informed consent. Nor is there anything in the Complaint to suggest Ms. Drake has indicated that she did not have the information necessary to make the decision to place Mr. Hickson in hospice or DNR status. Accordingly, Plaintiffs have not alleged sufficient facts to establish any lack of informed consent claim.

2. <u>Negligence in Failure to Guide the Guardian</u>

Plaintiffs' Complaint further alleges that because Ms. Drake was a "trainee" with a provisional guardianship license, that Dr. Cantu had a duty to "guide" Ms. Drake, to determine her experience and "explore, consider, provide to, and discuss with" Ms. Drake all information to allow for substitute decision making. Dkt. #1 at ¶¶ 110-120.

To assert a claim for medical negligence, a plaintiff must show: "'(1) a duty by the physician/nurse/hospital to act according to applicable standards of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury.'" *Montoya v. Las Palmas Med. Ctr.*, 2015 WL 12551109, at *7 (W.D. Tex. Aug.

6, 2015). "Whether a duty exists is a question of law for the court to decide." *Probst v. Ryder Truck Rental, Inc.*, 1999 WL 184127, at *8 (N.D. Tex. March 29, 1999) (citing *Porter v. Neimer, Jr.*, 900 S.W.2d 376, 385 (Tex. 1995)). And a court's conclusion regarding "[t]he nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *Id*.

In the instant case, there are no facts plead to support an allegation that Dr. Cantu had a duty to "guide" Ms. Drake nor to determine her experience and to "explore, consider, provide to, and discuss with" Ms. Drake all information which would allow for substitute decision-making. The guardian is appointed by the Probate Court and as the motion to dismiss points out, Dr. Cantu has no authority or standing to contest the appointment. It is the court-appointed guardian with training in substituted decision-making, not the physicians. Plaintiffs' attempted cause of action for alleged failure to "guide" and determine competency of the guardian is not allowed under TEX. CIV. PRAC. & REM. CODE Chapter 74 which is the statute that governs Dr. Cantu. Accordingly, Dr. Cantu's motion should be granted on this basis as well.

   3. Section 1983

Plaintiffs' Complaint concedes that Dr. Cantu is a physician employed by HIT, which is a nonprofit organization, and SDHP, which is a private healthcare provider. *See* Dkt. #1 at ¶¶ 21-22. For the reasons discussed above, Plaintiffs have not alleged any state actors or actions under color of state law, and thus their Section 1983 claims against Dr. Cantu and HIT fail as a matter of law and must be dismissed.

   **C. Dr. Vo's Motion to Dismiss**

Plaintiffs plead the following causes of actions against Dr. Vo: (1) Negligence under TEX. CIV. PRAC. & REM. CODE Chapter 74 (Dkt. #1 at ¶¶ 75-86); (2) Negligence *Per Se* (Dkt. #1 at ¶¶ 87-93); (3) Negligence in obtaining informed consent (Dkt. #1 at ¶¶ 94-109); (4) Negligence in

15

Failing to Guide Ms. Jessica Drake, a trainee, possessing a provisional guardianship certificate in substituted decision-making (Dkt. #1 at ¶¶ 110-120); (5) a Section 1983 claim for deprivation of 14th Amendment right to life (42 U.S.C.A. § 1983) (Dkt. #1 at ¶¶ 130-142)); and (6) wrongful death under TEX. CIV. PRAC. & REM. CODE Chapter 74 (Dkt. #1 at ¶¶ 143-152).

Like Dr. Cantu's motion to dismiss, Dr. Vo's motion asserts that Plaintiffs' claims of negligence in obtaining informed consent and in failing to guide the guardian, Ms. Drake, and their Section 1983 claims must be dismissed because Plaintiffs failed to state plausible claims under Rule 12(b)(6). *See* Dkt. #12.

1. Lack of Informed Consent

Under Texas law, "[a] cause of action for the failure of a doctor to fully inform a patient of the risks associated with medical care is a negligence cause of action," but it "is a particular subspecies of negligence based on a failure to disclose the risks or hazards of a procedure." *Rodgers v. Coleman*, 1994 WL 52497, at *6 (Tex. App.—Houston [1st Dist.] Feb. 24, 1994, writ denied); *Schaub v. Sanchez*, 229 S.W.3d 322, 323 (Tex. 2007). "In such cases there are two separate parts to the causation analysis: (1) whether a reasonable person could have been influenced to decide to give or withhold consent by being informed of the risks or hazards that were not disclosed; and (2) whether the injury complained of was caused in fact by the undisclosed risk." *Greenberg v. Gillen*, 257 S.W.3d 281, 283 (Tex. App.—Dallas 2008, pet. denied) (emphasis added). Thus, "[t]he inquiry must be whether a reasonable person, not a particular plaintiff, would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision," and "[o]nly in this way may a plaintiff establish that the failure to obtain informed consent was a proximate cause of his injuries." *McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989).

With respect to the Plaintiffs' claim that Dr. Vo was negligent in failing to obtain informed consent, Plaintiffs allege that "Dr. Vo . . . took charge of communicating with Mr. Hickson's court-appointed temporary legal guardian," and "[t]he information provided by Dr. Vo on the Treatment Decision Form was the basis for Ms. Drake's consent to the change of Mr. Hickson's code to DNR, his transfer to hospice and the withholding of all life-sustaining treatment, including artificial nutrition and hydration." *See* Dkt. #1 at ¶¶ 98 & 100. The Complaint goes on to allege that Mr. Hickson's guardian lacked informed consent because, "the information provided on that form by Dr. Vo is appallingly scant and grossly inadequate by which any person can make an informed consent to withdraw life-sustaining treatment," and Plaintiffs contend, "Dr. Vo's failure to provide Mr. Hickson's temporary guardians with sufficient information by which to make an informed consent for the change of his status from full code to DNR, transfer to hospice, and withdrawal of artificial nutrition and hydration, not only subjected Mr. Hickson to the most extreme degree of risk of harm but was intended to and resulted in the most extreme degree of harm, his death." *Id*. at ¶¶ 101 & 109.

Here, based on Plaintiffs' own allegations, it cannot be disputed that Dr. Vo clearly informed Mr. Hickson's legal guardian, Ms. Drake, of the "most extreme degree of harm, his death." *See* Dkt. #1 at ¶¶ 39, 42, 109. Accordingly, Texas law mandates that Plaintiffs have failed to state a valid claim for lack of informed consent, and such claim should therefore be dismissed with prejudice. *See, e.g., Tajchman v. Giller*, 938 S.W.2d 95, 100 (Tex. App.—Dallas 1996, writ denied) ("When the patient is informed of the risk that occurs and causes injury, as here, the question of what a 'reasonable person' would have done is not at issue. The fact is that the patient in this case . . . knew of the risk of stroke yet nevertheless consented to the DEP procedure. For this reason, the cases in which a risk was not disclosed do not apply to this case.").

2. <u>Failure to Guide Guardian</u>

Plaintiff's negligence in failing to guide Ms. Drake as guardian against Dr. Vo fail for the same reasons their claim against Dr. Cantu failed. There is no duty on Dr. Vo as a physician to "guide" Ms. Drake as the court-appointed legal guardian for Mr. Hickson. Thus any negligence claim against Dr. Vo based on such a duty fails as a matter of law and must be dismissed.

3. <u>Section 1983</u>

As with SDHP and Dr. Cantu, Plaintiffs' Complaint concedes that Dr. Vo is not a state actor. *See* Dkt. #1 at 23 ("Defendant Dr. Vo is self-employed"). For the same reasons their Section 1983 claims against SDHP and Dr. Cantu fail, Plaintiffs' Section 1983 claim against Dr. Vo fails as a matter of law and must be dismissed.

**D. Motion to Disqualify**

Lastly, Plaintiffs have also filed a motion seeking to disqualify Missy Atwood as counsel for SDHP and Dr. Anderson, arguing that Atwood is a material fact witness to Plaintiffs' claim of intentional infliction of emotional distress against SDHP and Anderson. See Dkt. #31. Defendants oppose the motion. Dkt. #39. As discussed above, the undersigned recommends dismissal of Plaintiffs' IIED claim. Should the district court adopt the undersigned's recommendation, Plaintiffs' motion for disqualification should therefore also be dismissed as moot.

**IV. RECOMMENDATIONS**

For the reasons stated above, the court **RECOMMENDS** Defendants' Motions to Dismiss be **GRANTED** (Dkt. #10, Dkt. #11, Dkt. #12).

The referral to the Magistrate Court should now be **CANCELED**.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED August 8, 2022,

MARK LANE
UNITED STATES MAGISTRATE JUDGE